KENJI M. PRICE #10523
United States Attorney
District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Jan 15, 2021**
Michelle Rynne, Clerk of Court

DARREN W.K. CHING #6903
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Darren.Ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) MAG. NO. 21-00078 WRP |
|---|---|
| Plaintiff, | ) CRIMINAL COMPLAINT; |
| | ) AFFIDAVIT IN SUPPORT OF |
| v. | ) CRIMINAL COMPLAINT |
| JAVIER CHAVEZ, | ) |
| Defendant. | ) |

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

1

<u>Count 1</u>
Possession with Intent to Distribute Cocaine
21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii)(II)

On or about January 13, 2021, within the District of Hawaii, JAVIER CHAVEZ, the defendant, did knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomer, and salts of its isomers, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii)(II).

I further state that I am a Task Force Officer of the Drug Enforcement Administration and that this Complaint is based upon the facts set forth in the attached "Affidavit in Support of Criminal Complaint," which is incorporated herein by reference.

DATED: January 15, 2021, Honolulu, Hawaii

_____
Sean Springer
Task Force Officer, DEA

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b), this 15th day of January 2021.

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

DARREN W.K. CHING #6903
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Darren.Ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Jan 15, 2021**
Michelle Rynne, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAG. NO. |
| Plaintiff, | CRIMINAL COMPLAINT; AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| v. | |
| JAVIER CHAVEZ, | |
| Defendant. | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

1. This affidavit is submitted for the purpose of establishing probable cause that on and about January 13, 2021, within the District of Hawaii, JAVIER

CHAVEZ ("CHAVEZ" or "Defendant") engaged in conduct that 21 U.S.C. §§ 841(a)(1) and ((b)(1)(A)(ii)(II). This affidavit is based upon my personal knowledge, my review of reports by other law enforcement officers, my communications with other law enforcement officers, information obtained from witnesses, and other evidence. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I or the government have learned during the course of the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. I am a State of Hawaii Sheriff Deputy currently assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) and as such, am part of the Honolulu Airport Task Force (HATF) within the High Intensity Drug Trafficking (HIDTA) office. I have been a Sheriff Deputy since April 2002. I have been with the DEA Task Force from April 2009 to the present. During my career, I conservatively estimate that I have been involved in over 75 drug investigations, of which at least 20 were airport-related drug investigations involving the smuggling of drugs through airports and commercial mail/parcel carriers. As a result of my experience and training, I am familiar with the common practices utilized by drug traffickers to smuggle drugs and money through airports

and commercial mail/parcel carrier.

3. During this time, I have become knowledgeable with the enforcement of State and Federal laws pertaining to narcotics and dangerous drugs. Based on this experience, I have become well versed in the methodology utilized in narcotics trafficking operations, the specific types of language used by narcotic traffickers, the unique trafficking patterns employed by narcotics organizations and their patterns of drug abuse.

4. On December 12, 2020, Deputy Sheriff Dexter Kauahi, related to TFO Sean Springer that Kauahi recently learned of a narcotics courier ("Individual 1"), who travels to Honolulu from his home in San Francisco, California multiple times a month with narcotics. Deputy Kauahi stated that Individual 1 allegedly travelled from California recently with 10 - 15 kilogram (approximately 22 - 33 pounds) of cocaine. Deputy Kauahi also stated that he learned that Individual 1 had recently returned to San Francisco with $400,000- $500,000 of United States currency to purchase more narcotics and is due to return to Hawaii.

5. On December 16, 2020, High Intensity Trafficking Area (HIDTA) Intelligence Analyst (IA) Jason Pa, reiterated some of the same information that Deputy Kauahi had relayed to TFO Springer on December 12, 2020. IA Pa further explained that Individual 1 was known to stay at the Hawaiian Monarch located at 444 Niu Street, Apartment 814, Honolulu, Hawaii when in Honolulu. IA Pa also

stated that Individual 1 is trying to get into the illegal gambling game room business by establishing a game room in Honolulu, Hawaii. Individual 1 is also attempting to use narcotics proceeds he earned to retrofit a room within the bar, known to be a hangout for other drug trafficking organizations for illegal gambling.

6. On December 18, 2020, IA Pa relayed to TFO Springer, that Individual 1 was due to return to Honolulu from California sometime on December 18, 2020 and was traveling with his cousin, Javier CHAVEZ.

7. On December 18, 2020, TFO Springer conducted electronic checks for Individual 1 and CHAVEZ on known flights that were due to arrive on Oahu. All checks were met with negative results.

8. Administrative subpoenas were sent out for Individual 1 and CHAVEZ to American Airlines, United Airlines, Hawaiian Airlines and Southwest Airlines through the end of December 2020 and early January 2021 by TFO Mancini, TFO Springer and Special Agent (SA) Albert Miliauskas to identify ZAOMORA and CHAVEZ's flying patterns between November 1, 2020 through February 28, 2021.

9. On December 30, 2020, SA Miliauskas received a return from United Airlines subpoenas that showed Individual 1 had scheduled two one-way flights from Honolulu to San Francisco in November 2020. Individual 1 made the

November 5, 2020 flight but got a refund for the November 12, 2020 flight. It also showed that Individual 1 had made reservations for two different one-way United Airlines flight from San Francisco to Hawaii on November 16, 2020 but never made the flights and got a refund. On December 6, 2020, Individual 1 took a one-way United flight from Honolulu to San Francisco. On December 21, 2020, Individual 1 took another one-way flight from Honolulu to San Francisco. For that flight, the gate agent noted that Individual 1 did a late check-in with three bags that were too late for a passenger to check-in.

10. On January 4, 2021, TFO Springer ran further electronic checks through law enforcement databases and found that Individual 1 was arrested by DEA San Francisco on March 16, 1999 with 1.5 pounds of crystal methamphetamine and was subsequently sentenced to eighty-seven month in federal prison.

11. On January 5, 2021, TFO Mancini ran electronic checks through the Hawaii law enforcement quarantine database for all travelers flying into Honolulu, HI. The checks showed that both Individual 1 and CHAVEZ had registered travel to Honolulu on December 18, 2020 aboard American Airlines flight 692 from Phoenix. They both gave the reason for their travel was to visit friends or relatives and gave the same lodging address, located at the Hawaiian Monarch, 444 Niu Street, apartment 814, Honolulu, HI.

12. On January 8, 2021, TFO Springer received a return from American Airlines subpoenas that showed Individual 1 had scheduled and flown on a one-way flight on November 30, 2020 from San Francisco, to Phoenix. Then after a few hours layover, fly from Phoenix to Honolulu. On December 18, 2020, Individual 1 flew on a one-way American Airlines flight from San Francisco to Phoenix. Then after a few hour layover, flew from Phoenix to Honolulu. Individual 1 scheduled the same flight route on January 7, 2021 but cancelled and rescheduled for January 8, 2021. Individual 1 never flew on January 8, 2021 but instead scheduled and flew on a one-way American Airlines flight on January 9, 2021 from San Francisco to Phoenix with a few hours layover and with a connecting flight from Phoenix to Honolulu. However, Individual 1 did not make his flight to Honolulu on January 9, 2021. According to American Airlines representative Michael Flores, later that day Individual 1 told American Airlines representatives that he fell asleep in the American Airlines lounge and missed his connecting flight to Honolulu. At about 6:00 pm that day, Individual 1 returned to San Francisco, from Phoenix on an American Airlines flight.

13. On January 8, 2021, TFO Springer received a return from American Airlines subpoenas that showed CHAVEZ had flown on a flight on December 18, 2020, on the same flight as Individual 1, from San Francisco to Phoenix with a few hours layover then to Honolulu. On December 22, 2020, CHAVEZ had scheduled

and flown on an American Airlines flight from Honolulu to Dallas Fort Worth with a few hours layover and a connect flight to San Francisco; however, CHAVEZ did not make the San Francisco connecting flight. An American Airlines representative noted that CHAVEZ claimed that he missed the connecting flight to San Francisco, because he went to the airport baggage claim in Dallas Fort Worth. It was also noted that since CHAVEZ missed his San Francisco flight, he was requesting to fly back to Honolulu, instead. American Airlines noted that CHAVEZ's baggage had flown to San Francisco and was a security issue to have a bag on a plane without a passenger. Finally, the airlines representative noted that CHAVEZ was told that if he wanted to fly back to Honolulu, he would have to buy a new ticket to Honolulu, from Dallas. TFO Springer interpreted the airlines representative's notation to mean that CHAVEZ received a later flight to San Francisco.

14. On January 10, 2021, TFO Springer received information from American Airlines that on that same day, Individual 1 and separately CHAVEZ had booked a flight leaving January 11, 2021, from San Francisco to Phoenix with a few hours layover, before connecting to Honolulu. On January 11, 2021 at approximately 4:30 AM., American Airlines representative Flores notified TFO Springer that neither Individual 1 nor CHAVEZ made their American Airlines flight from San Francisco to Phoenix. Later that day, American Airlines representative Flores notified TFO Springer that Individual 1 and CHAVEZ had

re-booked the same American Airlines flight from San Francisco to Honolulu via Phoenix, for January 13, 2021.

15. On January 12, 2021, TFO Mancini coordinated with TFO Sean Parks, SA Michael Musich and other members of the San Mateo Sheriff's Department to set up surveillance at the San Francisco International Airport and to locate Individual 1 and CHAVEZ at the airport.

16. On January 13, 2021, Task Force Officer Ryan Hyink and GS Michael Musich met with San Mateo County Sheriff's Deputy Detectives Sean Parks, Sergeant Mike Arguel, and Deputy Jimmy Chan at the San Francisco International Airport to conduct surveillance anticipating the arrival of Individual 1 and CHAVEZ.

17. On January 13, 2021, Task Force Officer Ryan Hyink and GS Michael Musich met with San Mateo County Sheriff's Deputy Detectives Sean Parks, Sergeant Mike Arguel, and Deputy Jimmy Chan at the San Francisco International Airport to conduct surveillance anticipating the arrival of Individual 1 and CHAVEZ

18. On January 13, 2021 at approximately 05:53 AM, TFO Hyink observed the arrival of Individual 1 and CHAVEZ in the vicinity of American Airlines check-in area. The two did not have any checked baggage.

19. TFO Hyink observed Individual 1 approach the American Airlines

check-in counter and CHAVEZ jogged to the American Airlines check-in KIOSK located adjacent to the Transportation Security Entrance (TSA).

20. At approximately 05:59 AM, TFO Hyink observed Individual 1 and CHAVEZ jogging from the American Airlines check-in area to the TSA entrance where Individual 1 checked into the screening area through security checkpoint into the sterile area of the airport. CHAVEZ, who made it to the entrance of TSA with the carry-on luggage turned back and ran with the carry-on luggage back to the American Airlines Check-in counter. GS Musich who was with an American Airlines employee at Terminal 1, Gate B22 was able to confirm Individual 1 had checked-in on his reservation and CHAVEZ had not successfully checked-in at this time.

21. At approximately 06:09 AM, TFO Hyink observed CHAVEZ run back to the TSA entrance from the American Airlines check-in counter with the carry-on luggage. At this point, Individual 1 exited the sterile area of the Airport and met with CHAVEZ in front of TSA and took possession of the carry-on luggage from CHAVEZ.

22. At approximately 06:12 AM, TFO Hyink observed Individual 1 enter through the TSA for screening a second time while pulling the carry-on luggage given to him by CHAVEZ.

23. TFO Hyink then observed CHAVEZ run from the TSA entrance back

to the American Airlines check-in counter where he was being helped by an American Airlines employee.

24. At approximately 06:16 AM, CHAVEZ ran back to TSA where he entered the security checkpoint screening area, then into the sterile area of the airport. CHAVEZ then ran from TSA and met with Individual 1 at Terminal 1, Gate B22 where GS Musich had a clear and unobstructed view of Individual 1 and CHAVEZ at the ticket counter. GS Musich was able to listen to Individual 1 speak with the American Airlines employee about Individual 1 not wanting to separate from the carry-on luggage and insisting he maintained possession of the carry-on luggage onto the plane.

25. Due to full capacity in the carry-on overhead bins, Individual 1 was denied his request and was told he could only gate check the carry-on luggage. Individual 1 was heard telling the American Airlines employee that he did not trust her and ultimately Individual 1 and CHAVEZ refused to board the plane.

26. At approximately 06:21 AM, GS Musich observed Individual 1 and CHAVEZ walk back towards TSA with the Subject Luggage. Individual 1 and CHAVEZ almost reached the TSA area and abruptly turned back around and began walking back into the direction of gate B22. Individual 1 and CHAVEZ entered the men's restroom across from gate B9 where they remained for a few

minutes.

27. Individual 1 and CHAVEZ then entered the American Airlines Admiral Club where they remained for a couple of hours. During this time, GS Musich was able to obtain information that Individual 1 and CHAVEZ had re-booked their flight for American Airlines flight #3275 at Terminal 1, gate #B23 departing San Francisco International Airlines to Los Angeles International Airport with a transfer to Honolulu.

28. At approximately 09:44 AM, GS Musich and TFO Hyink observed Individual 1 and CHAVEZ exit the American Airlines Admiral Club and Individual 1 was observed pulling the carry-on luggage. Individual 1 and CHAVEZ walked to Terminal 1, Gate B23 and arrived at the ticket counter. GS Musich observed Individual 1 valet check the carry-on luggage and observed Individual 1 and CHAVEZ enter the plane to their assigned seats 14C (CHAVEZ) and 2C (Individual 1).

29. Individual 1 and CHAVES were observed by Los Angeles authorities deplaning the flight from San Francisco and board their flight to Honolulu.

30. At Approximately 4:27 PM TFO Springer, at the Daniel K. Inouye International Airport in Honolulu, approached and conducted a consensual encounter of Individual 1. TFO Springer stated to Individual 1 that he was not in any trouble and was free to go at any time and if he would like to answer a few

questions. Individual 1 agreed to answer a few questions. Individual 1 related to TFO Springer that he was traveling alone and staying at 444 Niu Street #814 Honolulu, Hawaii (Hawaiian Monarch). TFO Springer asked Individual 1 if he would allow consent to search his backpack. Individual 1 agreed to the search. During the search Individual 1 appeared nervous and shaky. The search was met with negative results and Individual 1 left the quarantine area.

31. At Approximately 4:28 PM, PD K-9 "Rush" with handler Ray Bermudes conducted a sweep of the areas quarantine line which consisted of the carry-on luggage which was in the possession of CHAVEZ. During the sweep of the area Rush did not alert to any signs of narcotics. TFO Mancini then approached and conducted a consensual encounter of CHAVEZ. TFO Mancini stated to CHAVEZ that he was not in any trouble and was free to go at any time and if he would like to answer a few questions. CHAVEZ agreed. CHAVEZ related to TFO Mancini that he was traveling alone and would not allow consent to search his carry-on luggage. During the search CHAVEZ appeared nervous and shaky. CHAVEZ then entered the into the quarantine line.

32. At approximately 4:35 PM, Individual 1 exited the airport and entered a marked white taxi van. Surveillance units followed Individual 1 to 444 Niu Street (Hawaiian Monarch) where he arrived at 4:55 PM.

33. At Approximately 4:42 PM CHAVEZ exited the airport. Then at 4:49

PM, CHAVEZ entered a white Lexus SUV and surveillance units followed CHAVEZ to 444 Niu Street (Hawaiian Monarch) where he arrived at 5:20 PM along with the carry-on luggage.

34. The surveillance team observed Individual 1 and CHAVEZ enter the same room at the Hawaiian Monarch. The surveillance team observed Individual 1 and CHAVEZ leaving a room at the Hawaiian Monarch. CHAVEZ was carrying a dark blue duffle bag.

35. At approximately 6:13 PM, a white Porsche SUV occupied by only one person, an Asian male, later identified as Ping Hong Lee, pulled into the pickup area of the Hawaiian Monarch and was met by Individual 1 and CHAVEZ CHAVEZ was still holding the dark blue duffle bag. CHAVEZ entered the backseat of the Porsche with the dark blue bag and then quickly exited the Porsche without the dark blue duffle bag. A few moments later Lee sped off at a high rate of speed. Surveillance units followed the Porsche.

36. At approximately 6:16 PM, TFO Joseph AMASIU observed that the Porsche had no front license plate. TFO Amasiu then positioned his vehicle behind the Porsche and activated his siren and lights for a traffic stop. The Porsche then accelerated fleeing from TFO Amasiu through heavy traffic and made unsafe turns. Due to the reckless driving of Porsche, TFO Amasiu deactivated his lights and sirens and allowed the Porsche to flee without giving chase.

37. At approximately 6:20 PM, the Porsche and Lee were located by surveillance units at 2119 Citron street. Lee was then placed under arrest by HPD for reckless driving and cited for several traffic infractions.

38. At approximately 6:23 PM, HPD K-9 "Rush" conducted a sweep of the suspect vehicle alerting to the presence of narcotics outside of the rear passenger door of the Porsche.

39. The Porsche was secured by TFO Springer and subsequently transported to the Federal Building for security and storage.

40. On January 14, 2021, a Federal Search Warrant (Mag. No. 21-00069 WRP) was issued for the Porsche. The execution of the Search Warrant of the Porsche yielded *inter alia*: a dark blue duffel bag (the same bag that CHAVEZ was carrying and left in the backseat of the Porsche) containing approximately 11 kilograms of cocaine (field tested) in the backseat.

41. Based upon my experience and training, the possession of this quantity of cocaine and the way it was packaged is not consistent with personal use but rather is consistent with distribution.

\\
\\
\\
\\

42. Based on the foregoing facts, I respectfully submit that probable cause exists to believe that Javier CHAVEZ, the defendant, committed the aforementioned offense.

FURTHER AFFIANT SA YETH NAUGHT.

_____
Sean Springer
Task Force Officer, DEA

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crimes found to exist by the undersigned Judicial Officer at  5:15 PM  on January 15, 2021.

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b), this 15th day of January 2021.

_____
Wes Reber Porter
United States Magistrate Judge